MORGAN RYE AND OTHERS *v.* THE STATE.

1. EVIDENCE must correspond with the allegations and be confined to the point in issue, or tend to prove the issue, or constitute a link in the chain of proof, to the exclusion of collateral circumstances not capable of generating any reasonable presumption or inference respecting the principal fact or matter in dispute.

2. MURDER — EVIDENCE. — In a trial for murder, the State proved that the corpse of the deceased was found in the woods, and that the discoverers were said to be two persons not produced as witnesses. On cross-examination, the defence asked what had become of the discoverers; and the court excluded the inquiry as irrelevant. The record discloses no effort by the defence to obtain the testimony of the men inquired about. *Held*, that no error in the ruling is apparent.

3. CHARGE OF THE COURT. — No particular formula is prescribed for a charge on the requisite cogency of circumstantial evidence. An instruction on this or any other subject is sufficient if correct in substance, and so expressed as to be readily comprehended by the jury.

4. EVIDENCE. — In a trial for the murder of a person alleged to be " an adult male white person, whose name is to the grand jury unknown," it was not incumbent on the State to prove that the name of the deceased was unknown to the grand jury or the prosecution, there being nothing disclosed to indicate that it was known.

5. SAME. — Proof that the deceased was a horse-thief could in no respect palliate the criminality of his deliberate assassination.

APPEAL from the District Court of Polk. Tried below before the Hon. E. HOBBY.

The appellants in this case are Morgan Rye, Sr., Morgan Rye, Jr., Randolph Fields, and William Owens. They were tried at the December term, 1879, of the court below, on an indictment which charged them, together with one Frank Snell, with the murder, by hanging, of " one certain adult male white person, whose name is to the grand jury unknown," on February 17, 1877. The jury found them guilty of murder in the first degree, and assessed the punishment of each at a life-term in the penitentiary. By another and similar indictment the same defendants were charged with the murder of one Sam Black — a different person — on the same date.

The record discloses a case of marked peculiarity, though wanting in no characteristic of the heinous offence of which the appellants were convicted.   With deliberate premeditation, it appears, they assumed and exercised not only the functions of judge, jury, and executioner in the disposition of two men whom they had pursued and apprehended as horse-thieves, but decreed and inflicted upon them the condign punishment of death by hanging.   The appellants were citizens of Polk County, within whose limits the deceased met their fate, but, according to their own account, were on their way home from Louisiana when first encountered, at the county site of an adjoining county, by witnesses for the prosecution.   They had in their custody the two men for whose murder the indictments mentioned were preferred against them, and who, they said, were horse-thieves captured by them in Louisiana.

The opinion rendered in this case gives a very clear abstract of the most material portions of the testimony for the State, and there is no occasion to repeat here what there appears.

The masterly briefs and arguments filed for the appellants in this and the succeeding case would be marred by mutilation, and are too elaborate for a full insertion.

*F. Charles Hume*, for the appellants.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J.   These appellants, together with one Frank Snell, were jointly indicted in the District Court of Polk County for the murder of a person described in the indictment as "one certain adult male white person, whose name is to the grand jury unknown."   On the trial in the District Court, the appellants were put on trial without the other defendant, Snell.   The four appellants were brought to trial on December 29, 1879, and on being arraigned

each pleaded to the indictment not guilty. The jury empanelled for the trial, under the charge of the court upon the evidence, returned their verdict as follows: " We, the jury, find the defendants, Morgan Rye, Sr., Morgan Rye, Jr., Randolph Fields, and William Owens, guilty of murder in the first degree, and assess their punishment at confinement in the penitentiary for life." A motion for a new trial was made for the defendants, which motion was by the court overruled; thereupon judgment was entered against the defendants in accordance with the verdict of the jury, and the sentence of the law was pronounced against them. From the judgment and action of the District Court this appeal is prosecuted.

Several bills of exception having been taken to the rulings of the court on the evidence, it may not be amiss that we state briefly the general tenor of the testimony adduced, in order that the questions raised by the bills of exception may be the better understood. The testimony first finds the defendants at Woodville in Tyler County, Texas, having in charge two prisoners. A conversation ensued between a witness, the first one introduced by the prosecution, and one of the defendants, from which it was disclosed that, agreeably to his (the defendant's) statements, the defendants had captured the two prisoners in Louisiana, and said they were horse-thieves, or had stolen a horse. During the conversation the witness asked, if they had stolen horses, why did the defendants bring the prisoners back so far, and why did they not hang them when they caught them in Louisiana? One of the defendants said they did not know anything about the neighborhood in Louisiana where they had caught them, — did not know but that they might be in the neighborhood of the horse-thieves' friends. He told witness that if the people of Woodville would follow them (the defendants) and take the prisoners and hang them, no resistance would be made by defendants. The testimony is clear and positive that all the defendants were together and

acting in concert, having in charge the two prisoners, at Woodville.

The party were next seen on their way to the house of a Mrs. Griffin, where they spent a night, the defendants still having the two prisoners in custody. The party seem to have left Mrs. Griffin's the next morning, the defendants still having the prisoners in charge, where the defendants are said to have declared their intention to go through the " Big Thicket," and that the prisoners would get away from them down there, or something to that effect. The witness says : " It was the Big Thicket that the parties were going towards ; they were going in the direction of Wiggins's, — towards Liberty County." Another witness who saw the party at Mrs. Griffin's says he " heard the defendants say they would leave the prisoners in the Big Thicket and have a frolic with them ; the defendants had the two prisoners handcuffed and chained to the saddle." Another witness testified so pointedly, that, at the risk of seeming tedious, we extract pretty fully from his testimony as found in the statement of facts. He says : " In February, 1877, I lived in the edge of the Big Thicket ; the road passed by my house, going down to McConnico's, leading into the Liberty road. I am acquainted with the defendants at the bar. I saw them in the possession of two prisoners in February, 1877. * * * Saw the prisoners after they were dead, about four miles south from my house towards Liberty, and the same way the defendants went with them. * * * When I saw their dead bodies in the Big Thicket, the men who had got there before I did had the bodies lying out before a clay-root ; they had on nothing but their drawers and a knit shirt ; they each had a piece of rope tied around their necks. This was six or seven days after I first saw them in charge of the defendants, when they came to my house on the way towards Liberty ; it was pretty cool weather. * * * When they left my house, one of the prisoners was handcuffed, and the other chained to the saddle. * * *

The bodies were found in Polk County, Texas." It was also in proof that there was, near by where the dead bodies were found, a suitable tree having upon it the marks of a rope, and presenting to witnesses the appearance of having been used for hanging.

This is but an outline sketch of the testimony of numerous witnesses, which traces the defendants in charge of the prisoners from Woodville in Tyler County to near the place where the dead bodies of the two men were found in the Big Thicket in Polk County, where the defendants were prosecuted and convicted.

The questions arising on the rulings of the court upon the evidence, as gathered from the defendants' bill of exceptions, are: 1. When the State's witness Jordan was testifying on his cross-examination, he was asked this question: "What became of the two Cains, the men who were said first to have discovered the two bodies?" Counsel for the State objected to the question as being irrelevant, and the court sustained the objection. 2. Counsel for the State propounded to a State's witness, one Wiggins, this question: "State if you sold a man a pair of drawers who was going to Woodville, about two weeks before the alleged hanging of the two men?" Counsel for the defendants objected to the question as being irrelevant to the issue. The court overruled the objection and permitted the witness to answer the question. 3. The State's witness Jones, on cross-examination, was asked by counsel for the defendants the following question: "Did the defendants, at the time they were in Woodville with the prisoners, say whether they had the horses along which the prisoners were said to have stolen?" The question was objected to by the district attorney, on the ground that it was irrelevant to the issue, and the objection was sustained by the court. 4. The State's witness Jones being on the stand, the district attorney asked him the following question: "State if you know whether the two prisoners in charge of defendants at

Woodville, when you saw them there, had any money?" Counsel for the defendants objected to the question as being irrelevant to the issue. The court overruled the objection, and permitted the witness to answer the question.

With reference to these several questions or rulings of the court, it is urged on behalf of the appellants, first, that with reference to the two Cains, inasmuch as they appear to have been the first to discover the bodies of the two men after their murder, and as they were said to have gone before the grand jury when the defendants were indicted, it is urged by the counsel that "such evidence as the Cains could have given must be produced, or its absence accounted for, not only as to the main fact of the *corpus delicti*, but as well to all the evidentiary facts which may tend to connect the defendants with the crime. The law especially requires it in cases of merely circumstantial character." Such is the argument, and we are referred to a number of authorities in support of the position assumed. We are constrained, however, to say that the cases cited do not reach to the extent here claimed, nor have we seen any authority that does. Certainly the principle enunciated in *Cooper* v. *The State*, 19 Texas, 449, is quite unlike the question here presented. It is not perceived that the question here presented had any tendency whatever to aid the jury in coming to a satisfactory conclusion as to the guilt or innocence of the defendants; and besides, if necessary to have the presence and testimony of the persons who first discovered the dead bodies, if indeed the Cains were the first to make the discovery, we are at a loss to know why the defendants are not shown to have taken any steps or made any effort to procure their attendance. This question, and in fact all the questions on the evidence presented in the record, is controlled by the general rules which govern in the production of evidence, and which require that the evidence offered must correspond with the allegations and be confined to the point in issue, or tend to prove the issue, or constitute a link in the chain of proof (1 Greenl. on

Ev., sects. 51, 51 *a* ) ; and which rules exclude all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute.    Id., sect. 52.    The point in issue being the guilt or innocence of the defendants, as made by the charge in the indictment and the plea of not guilty made by the defendants, we fail from our stand-point, looking back through all the testimony adduced on the trial, to discover that any testimony, or the answer to any question which was excluded by any of the rulings of the court, was capable of affording any reasonable presumption or inference as to the principal fact sought to be established ; and therefore we see no material error in the rulings of the judge.

As to the testimony admitted over objection by defendants' counsel, when viewed in the light of the whole evidence as shown in the statement of facts, we are of opinion it was unimportant and immaterial, and could not have had any appreciable value with the jury in arriving at a verdict. The rule of the Supreme Court in *Morrison* v. *Loftin*, 44 Texas, 16, applies.    Evidence must correspond with the allegations and be confined to the points in issue.    *Fore* v. *The State*, 5 Texas Ct. App. 251.

The record presents a question as to the sufficiency of the charge of the court on the subject of circumstantial evidence, and the charge, as given, not being satisfactory to the defendants' counsel, a special instruction was asked by them, which the court declined to give.    The charge complained of is set out as follows :  " In this case, the evidence being circumstantial, it is the law that to warrant a conviction the circumstances in evidence must be of such a satisfactory character as to establish the guilt of defendants to a moral certainty, and to exclude every reasonable theory consistent with their innocence.    This rule simply means that if you can reasonably explain or account for the facts and circumstances in the case in a reasonable way which would be consistent with the innocence of the defendants, then if you can

reasonably do this, without resorting to unreasonable or fanciful doubts and wild speculative theories, then you should do so and acquit. But, on the other hand, if you find the facts and circumstances in this case cannot be reasonably accounted for or explained upon any reasonable grounds consistent with defendants' innocence, then it is your duty to convict. If the facts and circumstances in evidence are such as to establish the guilt of the defendants with a degree of certainty sufficient to satisfy the minds of men of ordinary understanding, and so as to convince them that they would act upon that conviction in matters of the highest importance to their own interest, the jury would be warranted in finding defendants guilty. Satisfactory evidence is such as ordinarily satisfies an unprejudiced mind beyond a reasonable doubt."

Whilst this charge may not be worded with critical precision and nicety, still it is believed it sufficiently instructs the jury as to the conclusiveness of circumstantial evidence to warrant them in finding a verdict on that character of testimony alone, and is a substantial compliance with the law on that subject. The law does not require that a charge upon this or any other subject should be couched in any particular set of words or phrases; so that the ideas are sufficient, and so expressed as that the jury can readily comprehend the meaning of the language employed, the demands of the law will be satisfied. The charge given being sufficient of itself, the special instruction became unnecessary and the court was not required to give it, and did not err to the prejudice of the defendants' rights to have the jury properly instructed in the law of the case. *Hunt* v. *The State*, 7 Texas Ct. App. 212; *Harris* v. *The State, ante,* p. 91, and *Smith* v. *The State,* at the present term, *ante,* p. 141.

It is urged further on behalf of the appellants that the conviction ought not to stand, because it was not proved on the trial that the name of the person charged to have been

murdered was unknown to the grand jury. It would be a sufficient answer to this position to say that there was no proof showing that his name was known, either to the grand jury or to any other person connected with the prosecution. The murdered man, if he was indeed murdered, and his companion, it may be in crime or it may be in misfortune, appear to have been strangers to all with whom they are shown to have met. The testimony, if it were an issuable fact, sustains the description in the indictment as " an adult male white person, whose name is to the grand jurors unknown." That the person injured may be described in an indictment as unknown, see *Jorasco* v. *The State*, 6 Texas Ct. App. 238, and authorities there cited, and *Rothschild* v. *The State*, 7 Texas Ct. App. 519. If on the trial before the petit jury the name appears to be unknown, the inference is that it was equally unknown to the grand jury. On the other hand, if the name is disclosed, the jury will be justified in doubting whether it was unknown to the grand jury, unless something appears in the course of the evidence to remove the doubt. *Jorasco* v. *The State, supra.* In the present case there is nothing to warrant the conclusion that the name of the deceased was known to the grand jury, nor was there any material variance on that subject between the allegations and the proofs.

Counsel for the appellants seems to insist that it was the theory of the prosecution to show that the murder was perpetrated for the purpose of gain. We are of opinion this position is not borne out by the record. It is averred in the indictment that the defendants unlawfully, wilfully, voluntarily, feloniously, with premeditated design, and of their express malice aforethought did combine and conspire together to take the life of, and kill and murder, the person described in the indictment, and with appropriate averments charges them with the perpetration of the murder in the manner proved on the trial by the circumstances narrated by the witnesses. It would seem that the prosecution was

begun, continued, and concluded on the idea that the defendants were guilty of murder, — no more, no less.   If any other theory appears from the evidence, it was injected into the case by the attempt of the defendants to create the impression that the two men, for the murder of one of whom they were on trial, were horse-thieves, and that it was no harm to kill such persons.   But these are matters of but little moment in determining the merits of the present appeal.

It is urged that the testimony, being circumstantial, is not of a sufficiently conclusive character to warrant the verdict and judgment.   In this view of the evidence we cannot concur; on the contrary, we deem it amply sufficient.   It may be, for aught that appears from the record, that the deceased was a bad man.   He is introduced to us as a stranger unknown.   If he was in fact a horse-thief, even that fact would not have justified his taking off in the manner he was disposed of.   For such offences the law has provided an adequate punishment; but even this was not, could not, have been shown by the defendants either as justification, mitigation, or excuse for the murder.   *Brown* v. *The State*, 6 Texas Ct. App. 286.   The defendants have been fortunate in having the aid of able and zealous counsel, as is amply attested by the brief and oral argument in their behalf before this court.

We have given the case the most thorough and careful examination, in all its parts, without discovering any such error in any part of the proceedings as would warrant us in interfering with the verdict of the jury and the judgment of the court.   There is no objection to the indictment. The charge of the court was a fair and impartial enunciation of the law arising upon the evidence.   The testimony is sufficient to support the finding of the jury.   There was no good cause shown for the granting of a new trial.   The appellants have been fairly tried and legally convicted.   In view of the importance of the occasion and our province

under the law, our duty requires that the judgment be affirmed; and it is so ordered.

*Affirmed.*